of the United States to be fully allowed. Thank you very much. Thank you very much. Good morning, may it please the court, Martin Vogelbaum for Samuel Boehme. Your honors, the Supreme Court has repeatedly emphasized that the involuntary administration of mind-altering drugs represents a significant, a serious incursion on personal liberty and bodily autonomy, and for that reason the court has consistently required that the government must have an overriding or essential interest in the involuntary administration of such medications before it may proceed. In the context of a cell case like we have here, the court has defined that overriding interest as the restoring to competency and ultimately the trial of an individual charged with a quote serious end quote crime. Now in this case, the record reflects that the district court repeatedly made extensive remarks reflecting its view that in fact the government did not have a serious crime. The district court questioned that certainly in a letter to the prosecutor, which struck me to be the district court orders the medication, but doesn't make an explicit finding. That's really your argument, isn't it? I mean, doesn't the district court have to make a finding about this being a serious case? Well, I think back into it, I think our position would be that there's enough in the record here of the district court's views that the government's interest in this prosecution is quote, quite low, that it questions whether this is even a quote significant criminal event. But are you saying we should do it for the district court or are you saying we should infer from the district court's earlier comments in a letter that predated its order to go ahead and medicate supports a finding that the district court concluded it wasn't serious? I think you could do either given the standard of review here since this is a purely legal question, and the court has before it the entire record, and it's de novo review. I think the court could arrive at that conclusion via either avenue. And on the question of whether in fact this- But we don't know. I mean, there are a lot of things we don't know. So I guess we do know what the statutory maximum is. We have a feel for what the guidelines might be, though there seems to be a little bit of confusion. I think your brief suggested it might even be higher if you were a career offender than what the government is saying, which is about 40 months. There seems to be some confusion as to whether or not he could be civilly committed with the government saying that he couldn't be, but then in the next breath saying that they were proceeding to do that. So wouldn't it make more sense to remand to the district court to go do the findings? I don't think that's necessary. I mean, certainly the court could do that. I don't think it's necessary. I also think, obviously, given the fact that my client at this point has now been incarcerated in pretrial detention for, I think it's approaching 43 months at this point, and even on my highest estimate of the guidelines- 38 months. Yeah, I thought it was- I had 40. I don't know. 38 months, 20 days. I think it depends on when you start counting. There's the filing of the complaint on January 27th, but ultimately there's not really a for a little bit after that. But in any event, he has been incarcerated for something that even at this point is approaching what his highest guideline range would be. Even under my generous calculations- Right, but we haven't really defined whether we should be looking at guidelines at all or whether we should just be looking at statutory maximums. I mean, it seems like we need to provide at least some clarity, don't you think? And I do have a view on that. I think that the language itself says the court is- the district court is to look at the particular facts and circumstances of the individual case. Now does that mean solely the offense conduct? No, I think it probably means all of the relevant and salient factors. I would include the statutory maximum. I disagree that that is an objective measure of the crime seriousness. I think rather it represents the legislature's view of what an appropriate punishment might be for the most egregious version of a particular offense, which is why typically, except in the absence of, for example, a mandatory minimum, these things are structured as a range that goes all the way from zero potentially to life or in some circumstances even death. The guidelines also have a virtue. I'm sorry, what argument are you making? You're making the argument that the statutory maximum doesn't show that it's serious enough to keep prosecuting if- or sorry, to do the involuntary medication if it's not likely that he's going to get the statutory maximum. Is that what you're saying? What's the relevance of what you just said about the statutory maximum, I guess, to the cell analysis? So I think several courts have taken the view that the statutory- a few circuits have taken the view that the statutory maximum is, you know, the starting point. It shows the seriousness. It shows the seriousness. And you're saying we should look case by case at whether this particular defendant's conduct was sufficiently serious, such that the government has an important interest in prosecuting him. That's correct. And both by looking at the offense conduct itself, which of course here is just spitting. I mean, nobody would equate this certainly. I mean, certainly many people would find it repulsive. But nobody would equate it with a violent assault on a correctional officer. So I think you should look also at the offense conduct, which this court has done and many courts have done. And I think that the guidelines have a role to play as well. Because they do, although it's not always possible to estimate them with perfect precision, and this case is an example of that. I think the concern about not being able to do that in a pre-sentencing posture is a little bit overstated. I mean, it is routinely done to structure plea agreements and have those kind of negotiations. Certainly everybody is familiar with them. And I think they represent a more realistic review of what the outcome of a case is likely to be. But in this case in particular, whether we're looking at the statutory maximum, I think the district court here at one point even expressed the view that, you know, you might actually get a high-end guideline sentence in this case. So the district court here is not even talking about the statutory maximum. I don't think that that's realistically on the table in this case. And I think that he could be deported. Yes. I mean, there are a number. So that would be, I would say that step one is to look, is to define the severity. So one special circumstance is if he's going to be civilly committed that he's not dangerous to everybody. If he's deported, is that the same thing as a civil commitment because he's not in the country? I think so. Or might you say, well, that means he can't be punished because he's going to leave the country. And so maybe the government has an important interest in prosecuting him. Which way does it cut is, I guess, my question. I think it cuts in our favor because here where you've got somebody who's already served 43 months or 38 months or whatever it is, and by the time this court renders a decision, and should this court affirm the district court, the estimate here is that it's going to take anywhere between four and eight months to even attempt to restore him to competency. And then, of course, there would be further proceedings. I mean, I think in this case in particular, punishment has been served. Deterrence has been served. Incapacitation has been served. This gentleman has an aggravated felony, as far as I know, and a final deportation order and a travel document has been issued. As far as I know, I'm not an immigration lawyer. So if the deportation is relevant, is that you need to do an inquiry as to how likely the deportation is. So the fact that there's travel documents issued means that it's likely he's going to be deported. Whereas maybe if the receiving country hadn't issued those documents, we wouldn't know, and that would make the government's interest greater. I don't really, I don't think there's any indication of that in the record. And I think that the fact that the. I'm asking you the legal question. I understand the record here indicates that there have been travel documents. But if we had a case in which he was ordered removed, but there hadn't been travel documents, and so we don't know whether the government's going to succeed in removing him, would that, that would cut in the government's favor, that they have more of an interest in detaining him or prosecuting him because we don't know if he's going to remain in the country or not? I think that would be right, except, you know, of course, it would have to be taken in conjunction with all of the other factors that we're discussing here. How long has the pretrial detention been? But wouldn't we also want to know how, you know, whether we deport people who are a danger to themselves and others? In other words, civil commitment is one of the considerations. I don't know, as I sit here, whether or not it's our policy to deport people who are a danger to themselves or others, but as long as they do it in another country, we're fine with it. Do you know the answer to that? I don't know the answer to that. What I can say is that I am unaware of any kind of, I mean, his case has been appealed to the, and affirmed by the, the immigration case, has been affirmed by the Fourth Circuit. So that, that order is final as far as I, as far as I know he has no other immigration recourse at this point. I, I would assume that the law being what it is, that if the government. But if he's been civilly committed, he'll be deported? They'll take him out of wherever, whatever institution he's in and deport him? No, I think, I think it's possible they may hold him for the duration of the civil, civil commitment and then deport him. I think it's possible that they may deport him in lieu of civil commitment, although I think that is probably not very likely. Are you aware of any cases that consider deportation as one of the cells factor? I mean, in the cells analysis? No, I did not come across any, any such case. It's hard to know what to make of a little bit of a civil commitment and deportation, right? He may be civilly committed, the government appears to be seeking this. There are travel papers, but that's certainly not a, a certainty of deportation. But the civil, even, even, even leaving, even leaving aside the question of deportation, the civil commitment obviously is, is still going forward. And that is, even in, even in the cell case, considered a major consideration in and of itself. And I think in tandem with, you know, the, the relatively unserious criminal conduct here, even in, even in the view of the district court, the amount he's time, of time he's already served and the amount of additional time he's likely to serve as this case proceeds, you know, I think the government's interest in continuing this prosecution is really vanishingly small. If the court doesn't have any other questions. Good afternoon, your honors, may it please the court, my name is Sean Eldridge. I'm an assistant U.S. attorney from the Western District of New York, and I represent the government on this appeal. The district court's cell order should be affirmed because the offense charged, assaulting two federal officers by spitting saliva and blood on them in May, 2020, the height of the COVID pandemic is plainly serious. And the government. Did the district court find that? So your honor, I don't disagree that the order is silent as to that point, but even as my friend concedes in the brief, that doesn't mean that the district court didn't decide that. The district court must have decided that. It was a focus and discussed many times at the proceedings. Well, how can we review it if we don't know what went into the finding? Right, no, I don't want to push too hard, Judge Sullivan, because I agree that it would have been much nicer even if we had a few sentences. But doesn't it seem like you guys even argued it? No, I don't think that's a fair characterization, your honor. But if you argue that it was serious, what were the root grounds that you offered? So, your honors, there was a pretty full discussion of this at the end of the cell hearing, at A347 to 359 of the record, where many of these factors were discussed. The fact, and the district court makes some observations. He talks before about the seriousness of the offense. In drawing a comparison to say, this is not an armed robber, this is not a meth or a fentanyl dealer, which in that is a fair characterization to say it may be relatively less. But of course, the test under cell is whether it is a serious offense. There's other discussions about potential deportation, about civil commitment. The district court observes that there's no evidence in the record that civil commitment would be likely. Those are all matters that were discussed. In terms of the original question, your honor, which was- I mean, is whether the government has an important interest, is that a fact question or a legal question? No, your honor, the case is- So we would review it to no vote anyway. Exactly right. So you're sort of saying we should assume that because the district court went ahead and ordered the involuntary medication, he must have decided that there was an important interest and we should decide whether he was right. Two responses to that, Judge Beneschi. That's right, I agree with that. I think the cases consistently and uniformly say that the first element is a legal question. It's reviewed by this court to no vote. In fact, even in the Ninth Circuit had brought this up in Hernandez-Vasquez, saying that it's an issue that this court, a reviewing court, is well equipped to review and evaluate for itself in the first instance. So if you're not convinced that Judge Larimer didn't make that decision in the first place, then the second argument is there's ample evidence in the record for this court to determine that the government has an important interest in this because it is a serious offense. What is that evidence? So one of the special circumstances that the Supreme Court told us about in cell is if the defendant has already been confined for a significant amount of time for which he would receive credit toward any sentence ultimately imposed. And as we were discussing, it seems like he's been in custody for about 39 months. And your brief says that the maximum sentence he could get under the guidelines is 41 months. And it will take a couple months to bring him up to competence, right? So isn't he just going to be sentenced to time served? And isn't that something that the cell court told us as a reason to conclude that the government doesn't have an important interest? Well, it's certainly a factor to consider, Your Honor. I don't agree that it completely undermines the interest in the prosecution. Because in cell and the cases that follow it, we talk about the other consequences. We've talked about some of them here today. Is it a great idea just to deport someone with mental health issues to another country and essentially make it their problem? I mean, Mr. Boima's counsel below raised the point- Right, so they're saying that they're willing to take him. Well, so that's true and not true. And let me talk about that for a second. Because the deportation question, two things. Just to answer Judge Livingston's question from before, are we aware of any cases that look at deportation as a cell factor? I have not seen any. I don't think it's inappropriate to consider it. But I haven't seen any cases that specifically say that. Judge Benashi, to your point about the facts of this case, what the record shows is that Mr. Boima has had a final order of deportation since 2011. 2011. And the fact that he's still here- He still hasn't been deported. So you're saying that actually we shouldn't assume that the government's going to succeed in deporting him. That's right, Judge. I mean, the travel documents- I didn't raise that question as to whether it's likely. And so he has travel documents, but the government still hasn't managed to deport him. That's right, Your Honor. And even in this case, the most recent set of travel documents were issued almost a year before the conduct took place in this case. And so I think those facts speak for themselves. So, but the premise of your argument is that he's a danger and so needs to be detained. But we just said he's likely to be sentenced only to time served. So what is the government actually going to achieve by prosecuting him if you're not going to detain him any longer? Sure. So a couple of responses to that. One, we don't know that he's going to receive a time served sentence. Is it possible? Of course it is. I think it is- Will you ask for an above guideline sentence? Do you think that that's justified? Judge, I don't- I hate to make predictive analyses about this. Is it possible? Sure. I mean, Mr. Boehm is- What predictive? Aren't you in charge of prosecuting him? I mean, isn't the- Well, Judge, but part of what we do, too, is we take all the facts that we know at the time. So we would have- Okay, so at this time, since you've already represented in your brief what the appropriate guidelines range is, and you've said it has a maximum of 41 months, given everything you know now about the case, are you going to ask a sentencing court to sentence him above the guidelines range? Judge, it is possible. And I would say this. I mean, if you take a look at Mr. Boehm's record, which includes very serious felony convictions, assault first, robbery with a dangerous weapon, two felony controlled substance offenses, an assault second sex offense that involves having sex with a 14-year-old. Do I think that that is the kind of person that would fall into a category deserving of an above guideline sentence that is outside the heartland of the normal defendants that we see? The answer is yes. Ultimately, the district court gets to decide that. And on the timing question, whether it's 38 or 43 months, I think it is about 42 months if we go back to- But why is it not, I mean, if he's a career offender, it's higher, and that was referenced in your adversary's brief. You're conceding he's not a career offender? No, Judge, I think we were taking a more conservative view of the guidelines. I mean, one of the factors that nobody discusses in their brief, and frankly, I thought about it as I was getting ready. Nobody put a chapter three adjustment for an official victim into the guidelines calculations, which I think goes to show why guidelines are something we look at. A lot of the cases from our sister circuits say that kind of at this early stage of the case, they may not be the best predictor, but they are absolutely a factor that we take a look at. Can I ask you about civil commitment? Please, Judge. Your brief is equivocal on that. On the one hand, you posit that there's no evidence to suggest he would qualify for civil commitment. But, and then a footnote, you say, but you've moved for civil commitment. Sure, Judge, so at the time- So you moved for something you didn't think that he would, that you're going to win on? Well, two responses to that. I mean, we are one government, and we speak with one voice. I mean, it was a separate US Attorney's Office who has jurisdiction over that in North Carolina, which is where Mr. Boema is held. I mean, the timing is such, well, I'd make two points. Number one, the doctors who testified from the BOP specifically said during the cell hearing, we don't think he's dangerous, we don't think he would qualify. That's point one. Point two is, I don't think it's unreasonable for the government to attempt to exercise multiple avenues. Because the timing here is such that the district court cell order is issued in January of 2023. I'm just saying this seems to be a relevant inquiry, and we don't seem to know whether he's going to be civilly committed or not. No, we don't. What we know is that about seven or eight months after the district court cell order was issued, so January of 2023, the government then moved in the summer, I think it was July or August of 2023, for civil commitment. And the parties agreed to immediately stay it. So it is out there, but the proceeding was filed and immediately stayed pending this matter. So what you were saying on behalf of the government is, we would like to civilly commit him, we'd like to deport him. But we don't know how the civil commitment is going to turn out because it's been stayed. We don't know how the deportation is going to turn out because there's been an order pending since 2011. And so, because that's all uncertain, we have an important interest in prosecuting him, and we might be able to get additional detention because we might ask for an above guidelines range. A combination of those, yes. And that's the reason why there's an important interest here. What I'm saying is that there is an important interest in prosecuting a serious offense, assaulting corrections officers who protect our country. Can I ask you that? I mean, I agree with that, obviously. But let's say we're undisputed that there's no way he's going to get additional jail time. Let's say there was a statutory maximum that prevented you from asking for more than 38 months, which you already got. So it's important to punish somebody for assaulting a corrections officer, but you have no ability to get additional detention from him. Under cell, wouldn't it be that you didn't have an important interest in the prosecution? No, Your Honor. And there's other fact specific questions that would come into play. For example, supervised release. Some of the cases from our sister circuits make what I think is a very important point about saying there is an additional benefit to having an individual, especially with these kind of mental health issues. So would you be able to get that here? So I think, could we get a term of supervised release? Yes. What would be the effect of it? It wouldn't come into play unless Mr. Boema were released first from immigration custody. I mean, I think he would still be under the district court supervision while he was in the United States in immigration custody, which is kind of an interesting interplay. Oh, right. So he's in immigration custody? Correct. Oh, so that's another point. So then even if he's not being deported, he is being detained, right? Well, so right now, because of the pendency of this action, he has been ridded into federal custody. Mr. Boema, notwithstanding these prior serious convictions, has been released on many occasions from immigration custody, which is how some of these convictions happened again. I mean, many of the convictions I referenced before, the sex of the 14-year-old is after, three or four years after the 2011 order of removal. So is his detention likely? Yes. Is it guaranteed? No. So if the law were followed, he'd be detained? I'm sorry, I missed the first part of your question. If the law were followed, he would be detained and then deported, right? He would be detained, sentenced. And he's detained pending removal, right? I think that's right. So if the law were followed, but you're saying we might release him? We don't control what immigration does, Judge. And what the record shows is he has been released from immigration custody in the past. Can I just ask, he had travel documents at one point. Does he still have travel documents or do we not know that? Judge, yes, so two answers to that. Again, they were issued in 2019. I mean, the next thing I'm going to tell you, I will admit, is outside the record. But he had them issued one prior time, at least one prior time, where the Sierra Leonean government issued travel documents to him. They were unable to travel because Mr. Boema then asserted he was not a Sierra Leonean resident. And in fact, we see him make that assertion here in the blue brief. There's a footnote in the blue brief that says, Mr. Boema says, you know, he is a native of the United States. Do I know that, I can't answer your question directly if the documents are active today or not. But I think the fact that when they were issued to the time he was committed the crime in this case was, I think, almost 10 months, I think speaks for itself. Unless the court has any further questions, thanks very much, I appreciate your time. Regarding the question of deportation, I guess I would say two things. First, much like civil commitment, SELL does not say that there must be a certainty that civil commitment is going to occur in order for it to be a relevant factor. And indeed, for it to diminish the government's interest in a prosecution. I would make the argument and take the position that similarly it would be unrealistic and not within the terms of SELL to demand a certainty that this gentleman is going to be deported or be deported within a certain time frame. Yeah, but the certainty affects the government's interest, right? So if it were a certainty, then you might say the government doesn't have an interest. But if it's not a certainty, then the government might have an interest in some additional detention. Well, the same could be said of civil commitment, Judge Menasche. Well, that's true. And then. I would think so, like, let's say in a hypothetical case, there's a 20% chance of civil commitment. And in another case, there's a 90% chance. Wouldn't you say the government's interest in prosecuting him is greater than the 20% chance scenario? I suppose so. I don't. But, you know, just looking at this case, I mean, my colleague has pointed out Mr. Boehma's rather substantial record. I would say that, you know, some of that information, again, is outside the record, much like the information about the travel documents. What we have in the record is records of arrests. But nevertheless, 4246, you know, raises the prospect or turns on whether the person, if released because of a mental illness, is going to pose a danger to personal property, a substantial danger to personal property. Clearly, the director of Butner, who is required to file the Certificate of Mental Disease or Defect, thinks that is the case. And based on, I assume, based on their own investigations of Mr. Boehma as well as his record, and if I may offer something outside of the record myself, I know for a fact that Mr. Boehma's sister has actually been in contact with Butner. And so they are investigating even his family at this point. So I don't think, while that matter has stayed, I don't think that anybody is anticipating that it's not going. So you're just saying that civil commitment is likely? I think it's very likely in this case. And then what about the immigration detention? So if he's been released before, does he have a ground for being released now before removal? I don't think he has a legal ground. And as a matter of fact, it's in the record that his parole was revoked after the affirmance by the Fourth Circuit. So I don't think he's going anywhere. I understand that the question about whether the government has an important interest is a legal question. But if it depends on some of these facts about whether, or I don't know if they're facts, but some predictive judgments about whether he could get an above guideline sentence, or a term of supervised release, or it's the likelihood of civil commitment, or the likelihood of removal, or immigration detention, if the district court didn't really lay that out for us, shouldn't the district court do that in the first instance? Well, I think, as I said before, I mean, certainly this court could remand for further fact finding. I think that would be highly prejudicial to my client, obviously. And I would also point out that there is, without knowing to certainty, there are some ways that we can be realistic about these things. My friend, Mr. Eldridge, says that they may seek an above guideline sentence in this case. If their top estimate of guidelines, I think, is 27 to 33 months, even if you were to double the top end of that and make it 66 months, I mean, that's only slightly... I think you said in their brief it was 41. Okay, so... In your brief, you said if he's a queer offender, it could be 63. Right. And he's talking about some additional adjustments that might apply. And also, an above guidelines sentence would be above whatever that is, right? So we don't know what the number would be, right? Right. But I guess the point I was making that if the top end really is 41 months, I mean, even if... You're saying how far above the guidelines... Is it realistic to think that the district court is going to give him 82? I think that's extraordinarily unlikely. And I think that there is some common sense to be applied here. On the question of whether or not he is a danger, I would like to point out that the district court here and the government and the witnesses that... Mr. Eldridge, I'm sorry to say, is quite wrong. The witnesses did not testify that Mr. Bowiema was not a danger in the sense that were he to be released, which is the concern, whether he would be a danger. They were talking about the Harper versus Washington situation, which asked only in the institutional context, as an inmate, is this person so debilitated that he is unable to care for himself or a danger to others? And the testimony actually was, no, we can't go the Harper route in this case because we've got him in a solitary cell 24 hours a day. He's, although not cooperative with staff, he's not violent with them. He takes his meals. He's taking care of himself adequately. So I think there is some confusion around the dangerousness question. But was there a Harper motion made or not made? I think that when nobody actually comes out and says whether there was an administrative proceeding, but what one can infer quite clearly from the testimony is that the staff at Butner did not think that that was an option because he was not exhibiting any of the signs that would justify involuntary medication on those grounds. And if the court doesn't have anything else, I think that's all I have. Thank you. Thank you both. And we'll take the matter under advisement.